# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY McCOY, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:21-cv-389 |
| v. | |
| PAN AMERICAN GROUP, LLC, t/d/b/a Panera Bread, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A. ***Preliminary Statement***

1. The plaintiff Tammy McCoy brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of her right to be free from employment discrimination and retaliation based upon her religion. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B. ***Jurisdiction***

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about August 13, 2020, the plaintiff timely filed a charge alleging harassment and discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2020-02096. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue on February 12, 2021.

5. This complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. **<u>The parties</u>**

6. The plaintiff Tammy McCoy is an adult individual who resides at 3501 Miles Avenue, Clairton, PA 15025 (Allegheny County).

7. The defendant Pan American Group, LLC t/d/b/a Panera Bread ("PAN" or the "company") is an entity doing business in the Commonwealth of Pennsylvania, and, specifically, in this district. The defendant maintains a place of business at 623 Clairton Blvd, Pittsburgh, PA 15236 (Allegheny County).

8. At all times material, the defendant employed more than fifteen employees.

9. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D. **<u>Factual Background</u>**

10. The plaintiff was hired by PAN on October 7, 2019. Her employment was terminated on August 1, 2020. At the time of her discharge, her job title was Open Baker.

11. PAN is a restaurant franchisee that owns and operates over 100 Panera bakery cafes throughout the country including several in Western Pennsylvania. The plaintiff worked at PAN's Panera bakery café located at 623 Clairton Blvd, Pleasant Hills, PA 15236.

12. The plaintiff's duties as Open Baker included setting up the displays, preparing for lunch, cleaning the dining room and waiting on customers. She typically worked between 30 and 40 hours a week.

13. At all times relevant, the plaintiff performed the functions of her job competently and efficiently and was considered to be a satisfactory employee.

14. The General Manager was Lori Dubs and the Assistant General Manager was Kerri Ann Show. The plaintiff reported directly to both of them regarding her job duties and responsibilities.

15. The plaintiff's religious faith is Paganism, more specifically, Neopaganism, which is described as a movement by modern people to revive nature-revering/living, pre-Christian religions or other nature-based spiritual paths, frequently also incorporating contemporary liberal values.

16. The plaintiff did not discuss her religion or her religious beliefs at work and viewed her (as well as other individuals') faith as strictly a private matter.

17. On or about May 29, 2020, the plaintiff was outside the Panera on a break, along with Show, Dubs and Maria Bruno, Line Opener. They were talking about general topics at first, like the music they like, but suddenly Show started talking about religion. Show disclosed that she was Christian and she turned to the plaintiff and asked her "what religion are you?"

18. The plaintiff was a surprised by the question. In response, she said, "I'm Pagan". Although she preferred not to talk about religious beliefs at work, she felt obligated to answer Show's question since Show was her supervisor.

19. Show made a face and immediately said, "You're going to hell." Dubs, standing near by, vigorously nodded her head in agreement, her facial expression indicating that she was upset with the plaintiff's disclosure.

20. The plaintiff did not want to argue with Show or Dubs about the situation because she was concerned about losing her job if she got into a dispute over religion, so she just said, "okay" and walked away. The plaintiff hoped that the subject would be dropped and never brought up again.

21. A couple of days later, on or about June 2, 2020, the plaintiff asked Show when the work schedule would be posted. Show told the plaintiff, "Your hours are being cut until you find God." She reiterated that the plaintiff needed to "find God" before she would return the plaintiff to her previous schedule.

22. Show made good on her promise. The plaintiff's schedule for that week was reduced to three days. Thereafter, the plaintiff was scheduled for fewer hours/days than she was before Dubs and Show found out about her religious beliefs. Further, on days that she was scheduled to work, she was often sent home early – before the end of her scheduled shift – by either Dubs or Show.

23. The plaintiff noticed that Show and/or Dubs were clocking the plaintiff out for 30-minute breaks that the plaintiff did not take. She asked Dubs about it and Dubs said that it was a problem "in the system", but she never corrected the alleged problem and the plaintiff continued to get "docked" for breaks that she did not take. This practice further reduced the plaintiff's pay; she was not compensated for all of the time she actually worked.

24. Over the next couple of weeks, Dubs and Show created and subjected the plaintiff to a hostile work environment because of religion. They frequently told the plaintiff things like that her religion is false, that she needs to believe in God, that her soul will be condemned to hell and that they would pray for her soul.

25. On June 11, 2020, Diann [last name unknown], the District Manager, was at the Panera location. Diann is friends with Dubs and Show; previously they all worked at a Kentucky Fried Chicken and when Diann was hired by PAN to be district manager, she recruited and hired Dubs and Show.

4

26. The plaintiff approached Diann and told her that Dubs and Show keep bringing up her religion and were harassing her because of her faith. She told Diann that she felt that it was not appropriate to talk about religion at work and that it wasn't right that she was being harassed because of her faith. Diann downplayed the situation. She told the plaintiff that Dubs and Show are "just joking around". The plaintiff asked if she could be transferred to another Panera location. Diann told her "no" and said, "we're probably going to get rid of you anyways."

27. The plaintiff then asked for the phone number of PAN's human resource department. Diann said, "If you call HR about this, you'll be fired on the spot."

28. The workplace harassment got worse after the plaintiff's encounter with Diann. Show threatened physical violence; she said, "I'm going to whup your butt". Dubs and Show continued to demean the plaintiff about her religion and continued to give her fewer work hours.

29. One of the other employees reported to the plaintiff that she overheard Dubs and Show plotting on how to get rid of the plaintiff by "setting her up for stealing".

30. The plaintiff was able to get the phone number of PAN's human resource department, specifically Jenn Zika in PAN's corporate office in Ohio. She called and left a message about her situation but did not receive a return call or any other contact. Starting around July 13, 2020, the plaintiff called Zika every day and left messages, but never got a return call. She did not tell anyone that she was calling HR.

31. On July 27, 2020, Dubs told the plaintiff to put in her month's notice. In other words, she demanded that the plaintiff resign her job. The plaintiff responded, "what did I do that was so wrong?" Dubs responded, "I don't like you".

5

32. Later that week, Diann pulled the plaintiff aside and snidely said, "How are those phone calls going for you?" Diann obviously knew that the plaintiff was trying to get a hold of Zika but apparently instructed Zika not to return the calls and not to do any investigation.

33. On August 1, 2020, the plaintiff received a phone call from one of her co-employees. This person is not a manager. This person told the plaintiff that she was instructed to tell her that the plaintiff and her husband (who also worked for PAN at the same location) were no longer "welcome" and that their employment was terminated. She also told the plaintiff that Dubs and Show told all of the employees that no one was allowed to talk to her.

34. The plaintiff was subjected to a hostile work environment because of her religion. She was treated differently in the terms and conditions of her employment because of her religion. Her employment was terminated because of her religious beliefs. Finally, she was retaliated against for raising issues and concerns with managers and attempting to raise issues and concerns with HR regarding harassment and discrimination based on her religion. Any other reasons proffered by PAN are nothing more than pretexts.

## FIRST CAUSE OF ACTION

35. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

36. The plaintiff is protected against harassment and discrimination on the basis of her religion under Title VII.

37. The plaintiff was qualified for her position.

38. As detailed above, the plaintiff was harassed in the workplace because of her religion.

39. Despite her qualifications, the plaintiff was discharged.

40. The defendant's harassment and discharge of the plaintiff were in violation of Title VII because it was based upon her religion.

41. In addition to harassment and discrimination based on religion, the company retaliated against the plaintiff for engaging in protected activity, i.e., reporting the harassment to management and attempting to do so with HR. A motivating factor for the plaintiff's termination was retaliation for raising issues regarding ongoing religious harassment.

42. The defendant's violations of Title VII were committed with intentional or reckless disregard for the plaintiff's federally protected rights.

## SECOND CAUSE OF ACTION

43. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

44. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from religious discrimination, harassment and retaliation under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

45. The defendant's violations of the PHRA were committed with intentional or reckless disregard for the plaintiff's protected rights under the PHRA.

WHEREFORE, the plaintiff respectfully requests judgment be entered in her favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306

2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219

(412) 281-8676

Counsel for the plaintiff

Dated: March 24, 2021