# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY MCCOY, | : |
| Plaintiff, | : |
| v. | : Civil Action No. 2:21-CV-00389-CCW |
| PAN AMERICAN GROUP, LLC, | : |
| Defendant. | : |

## DEFENDANT'S BRIEF IN SUPPORT OF
## ITS MOTION TO COMPEL ARBITRATION AND DISMISS COMPLAINT

By: STEVENS & LEE, P.C.

Lisa M. Scidurlo, Esq.
620 Freedom Business Center, Suite 200
P. O. Box 62330
King of Prussia, PA 19406
Telephone: (610) 205-6042
Facsimile: (610) 988-0870
Email: lmsc@stevenslee.com

*Counsel for Defendant*
*Pan American Group LLC*

Date: May 24, 2021

# TABLE OF CONTENTS

I. INTRODUCTION AND PROCEDURAL HISTORY ........................................1

II. FACTUAL BACKGROUND...........................................................................1

III. ARGUMENT ....................................................................................................5

    A. STANDARD OF REVIEW .......................................................................5

    B. THE FEDERAL ARBITRATION ACT MANDATES ARBITRATION OF THE CLAIMS SET FORTH IN THE COMPLAINT .............................6

        1. A Valid Agreement to Arbitrate Exists Between the Parties.............8

        2. Plaintiff's Claims are Within the Scope of the Governing Arbitration Agreement .......................................................................9

        3. This Action Should be Dismissed in Favor of Arbitration ................11

IV. CONCLUSION ................................................................................................12

# **TABLE OF AUTHORITIES**

**STATUTES, RULES & REGULATIONS**

*Federal*

Federal Arbitration Act, 9 U.S.C. §§ 1-16 .................................................................1, 6, 7, 8, 9, 11, 12

Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq.* .................................................1

Federal Rule of Civil Procedure 12(b) ..............................................................................................6

*State*

Pennsylvania Human Relations Act ..................................................................................................1

**CASES**

*Alford v. Dean Witter Reynolds, Inc.,*
  975 F.2d 1161 (5th Cir. 1992) ......................................................................................................11

*Allied-Bruce Terminix Companies, Inc. v. Dobson*,
  513 U.S. 265, 115 S. Ct. 834 (1995) ..........................................................................................7, 8

*AT&T Technologies, Inc. v. Commns. Workers*,
  475 U.S. 643, 106 S. Ct. 1415 (1986) ........................................................................................8, 9

*Battaglia v. McKendry*,
  233 F.3d 720 (3d Cir. 2000) ...........................................................................................................9

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ........................................................6

*Circuit City Stores, Inc. v. Adams*,
  532 U.S. 105, 121 S. Ct. 1302 (2001) ........................................................................................7, 8

*Dean Witter Reynolds, Inc., v. Byrd*,
  470 U.S. 213, 105 S. Ct. 1238 (1985) ............................................................................................7

*Equal Employment Opportunity Comm'n v. Waffle House, Inc.*,
  534 U.S. 279, 122 S.Ct. 754 (2002) ...............................................................................................8

*Guidotti v. Legal Helpers Debt Resolution, LLC*,
  716 F.3d 764 (3d Cir. 2013) ...........................................................................................................6

*Harris v. Green Tree Financial Corp.,*
  183 F.3d 173, 178 (3d Cir. 1999) ...................................................................................................9

*Laborers' Combined Funds of W. Pennsylvania for Ameris v. Macson Corp.*,
  No. 2:16-CV-01506, 2018 WL 2009090 (W.D. Pa. Apr. 30, 2018) ..........................6

*Lloyd v. HOVENSA, LLC*,
  369 F.3d 263 (3d Cir. 2004)...............................................................................11

*Lum v. Bank of Am.*,
  361 F.3d 217 (3d Cir. 2004)..................................................................................6

*Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*,
  247 F.3d 44 (3d Cir. 2001)..................................................................................10

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*,
  473 U.S. 614, 105 S. Ct. 3346 (1985) ................................................................10

*Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*,
  460 U.S. 1, 103 S. Ct. 927 (1983)................................................................5, 6, 7

*Palcko v. Airborne Express, Inc.*,
  372 F.3d 588 (3d Cir. 2004)..................................................................................6

*Seus v. John Nuveen & Co., Inc.*,
  146 F.3d 175 (3d Cir.1998)................................................................................11

*Southland Corp. v. Keating*,
  465 U.S. 1, 104 S. Ct. 852 (1984)........................................................................7

*Tripp v. Renaissance Advantage Charter Sch.*,
  2003 WL 22519433 (E.D. Pa. Oct. 8, 2003)................................................8, 9, 10

*Trippe Mfg. Co. v. Niles Audio Corp.*,
  401 F.3d 529 (3d Cir. 2005)..................................................................................8

*Varallo v. Elkins Park Hosp.*,
  63 F. App'x 601 (3d Cir. 2003) ...........................................................................10

Defendant Pan American Group LLC ("Defendant" or "PAN"), by and through its counsel, Stevens & Lee, P.C., hereby files this Brief in support of its Motion to Compel to Arbitration and Dismiss Complaint, pursuant to the Federal Arbitration Act, the Federal Rules of Civil Procedure, and the arbitration agreement entered into between Plaintiff, Tammy McCoy ("Plaintiff" or "Ms. McCoy") and Defendant. For the reasons set forth more fully herein, this Motion should be granted.

## I. INTRODUCTION AND PROCEDURAL HISTORY

On or about March 24, 2021, Plaintiff filed the instant Complaint and Jury Demand (the "Complaint"), wherein she alleged that Defendant engaged in unlawful conduct in connection with her employment with and subsequent separation from PAN. The Complaint alleged two (2) causes of action. Specifically, Count I alleges that Plaintiff was subjected to harassment and discrimination on the basis of religion in connection with her employment at PAN, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e, *et seq*, and Count II alleges that Plaintiff was subjected to harassment, discrimination, and retaliation on the basis of religion in connection with her employment at PAN, in violation of the Pennsylvania Human Relations Act.

As discussed herein, all of Plaintiff's claims are governed by a valid and enforceable arbitration agreement that expressly mandates arbitration of such claims between the parties. Accordingly, Defendant moves this Court to compel arbitration pursuant to the governing arbitration agreement and the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, and dismiss the Complaint (or stay proceedings pending arbitration).

## II. FACTUAL BACKGROUND

Plaintiff's claims against Defendant in issue in this action relate to her former employment with Defendant, at PAN's Panera Bread café location in Pleasant Hills,

1

Pennsylvania (also known as the "Southland" location). PAN is a franchisee of a chain of cafes operating as Panera. After a previous period of working for PAN, Plaintiff sought to be re-hired by PAN in or about October of 2019. On October 10, 2019, Plaintiff was hired as a Restaurant Staff Associate at PAN's Southland location.

During her onboarding process on October 10, 2019, McCoy was required to electronically review and accept all onboarding documents by way of an individually assigned and password-protected online portal account (the "talentReef Portal account"). McCoy memorialized her acceptance of, among other onboarding documents, a Dispute Resolution Program Booklet ("DRP" or "Dispute Resolution Agreement"), by executing the contractual agreement with PAN and submitting her electronic signature to confirm the same. *See* the Declaration of Casey Brozack In Support of Defendant's Motion to Compel Arbitration and Dismiss Complaint ("Brozack Declaration"), attached to Defendant's Motion as Exhibit B.

The DRP was a mandatory condition of Plaintiff's employment with PAN. According to the DRP, the parties expressly and unequivocally agreed to arbitrate any and all disputes arising between Plaintiff and PAN, including those claims arising out of Plaintiff's employment relationship with PAN. *See* Exhibit B to Defendant's Motion, wherein a copy of McCoy's executed DRP Booklet is attached to the Brozack Declaration as "Exhibit A." The DRP makes clear that the dispute resolution procedures contained therein were the mandatory and exclusive means by which McCoy may resolve any claims she may have against PAN, providing in pertinent part:

> **THIS PROGRAM IS A CONDITION OF YOUR EMPLOYMENT AND IS THE MANDATORY AND EXCLUSIVE MEANS BY WHICH DISPUTES BETWEEN YOU AND THE COMPANY MAY BE RESOLVED, SO READ THE INFORMATION IN THIS PROGRAM BOOKLET CAREFULLY.**
>
> When you have a work-related problem, follow the steps listed below in this

policy.

*See* Exhibit B to Defendant's Motion, at "Exhibit A," Page 1 (capital letters and bold face type in original).

The DRP further explains the nature and requirements of the mandatory arbitration procedure, providing in pertinent part:

> **Step 4: ARBITRATION**
> If you have a work-related problem that involves one of your legally protected rights, which has not been resolved through the earlier steps, you may request Arbitration. In Arbitration, an outside neutral expert chosen and agreed upon by you and the Company, called an "arbitrator", becomes involved in the resolution process. He or she listens to the facts, then makes a final binding decision and awards any damages, just like a judge in a court of law. Arbitration is less formal than conventional court litigation but is clearly established and governed by rules and standards of conduct, which are designed to assure due process of law is fully protected. The goal of Arbitration is to provide effective and efficient problem resolution.
>
> Here is how the Arbitration process works:
>
> 1. **Request Arbitration**. If you believe you have a legal claim, you may request that your claim go to Arbitration. Note that your request for arbitration must be made within the applicable statute of limitations for your underlying claim. The arbitration will be conducted by the AAA or any similar organization mutually acceptable to you and the Company The arbitration will be conducted under the AAA's "National Rules for the Resolution of Employment Disputes", which are in effect at the time of the demand for arbitration is filed. The rules can be obtained from the AAA's website at www.ADR.org or from the Company upon request.
>
> 2. **The arbitration agency** selected (the "agency") will then bill you and the Company each a filing fee. Your portion of that fee is limited to $215.00. The Company will pay the balance of the agency's initial filing fee and will pay the arbitrator's fee. If you establish that you cannot pay the filing fee, the Company will pay your portion of the fee.
>
> 3. **A hearing is set**. The arbitrator will schedule a date, time and place for a hearing. During this hearing, both you and the Company present the pertinent facts, documents, and witnesses. You may hire a lawyer to participate in the Arbitration hearing with you. The hearing will be conducted in the community where you were employed or in another mutually agreeable location.
>
> 4. **A decision is made**. Based on the information presented and the facts gathered, the arbitrator will make a final binding decision in writing that will

3

set forth the essential findings and conclusions on which the award is based. The decision of arbitrator shall have a final and binding effect in any related litigation. If you win, the arbitrator can award you anything you might seek through a court of law. By using Arbitration, your rights are protected, and damages can be paid if those rights have been violated.

*See* Exhibit B to Defendant's Motion, at "Exhibit A," Pages 2 – 3 (capital letters and bold face type in original).

The DRP also expressly provides a non-exhaustive list of legal claims subject to mandatory arbitration, stating in pertinent part:

**CLAIMS SUBJECT TO ARBITRATION**

Claims and disputes subject to arbitration include all those legal claims you may now or in the future have against the Company or against its officers, directors, shareholders, employees or agents, including claims related to any Company employee benefit program or against its fiduciaries or administrators (in their personal or official capacity), and all claims that the Company may now or in the future have against you, whether or not arising out of your employment or termination, except as expressly excluded under the "Claims Not Subject to Arbitration" section.

Legal claims that are subject to arbitration include, but are not limited to:

• claims for wages or other compensation;
[…]
• tort claims (including, but not limited to, claims for physical, mental or psychological injury, but excluding statutory workers compensation claims);
• claims for wrongful termination;
• claims for sexual or other illegal harassment or discrimination (including, but not limited to, claims based on race, sex, sexual orientation, religion, national origin, age, medical condition or disability whether under federal, state or local law);
[…]
• claims for a violation of any other non-criminal federal, state or other governmental law, statute, regulation or ordinance; and
• claims for retaliation under any law, statute, regulation or ordinance.

*See* Exhibit B to Defendant's Motion, at "Exhibit A," Page 3 (capital letters and bold face type in original).

Finally, while the DRP does not preclude McCoy from pursuing an administrative claim with any local, state, or federal agency, the DRP expressly prohibits McCoy from pursuing her

claims in court. *See* Exhibit B to Defendant's Motion, at "Exhibit A," Page 3 ("This Agreement, does, however, preclude you from personally pursuing court action regarding any such claim"). Accordingly, at the time of hire, McCoy was aware of and, further acknowledged the acceptance of, her contractual obligations to arbitrate any disputes between herself and PAN, including those claims related to alleged harassment or discrimination arising from her employment with PAN.

On or about August 1, 2019, PAN effectuated McCoy's voluntary resignation, following McCoy's communication of her intent to resign to spend more time with family. Subsequent to McCoy's resignation, PAN did not hear from or see McCoy again, until it received notice of McCoy's charge against PAN in the U.S. Equal Employment Opportunity Commission ("EEOC"), filed August 12, 2020. On February 12, 2021, following its independent investigation, the EEOC issued a dismissal of McCoy's charge and notice of right to sue.

On or about March 24, 2021, rather than abiding by her contractual obligations under the DRP, McCoy commenced this court litigation by filing a Complaint and Jury Demand. Upon notice of this litigation, Defendant's counsel sought to meet and confer with Plaintiff's counsel, by way of email correspondence on April 30, 2021, to determine whether Plaintiff would cure her pleading defects as to the issue of mandatory arbitration without necessitating Defendant's Motion. On May 6, 2021, Plaintiff declined Defendant's request to move this action into arbitration. Defendant now brings this Motion to Compel Arbitration and Dismiss Complaint for the Court's consideration.

### III. ARGUMENT

#### A. STANDARD OF REVIEW

It is a well-established rule that any doubts regarding arbitrability should be resolved in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25,

103 S.Ct. 927, 941-942 (1983). The United States Court of Appeals for the Third Circuit has instructed that its decisions "support the traditional practice of treating a motion to compel arbitration as a motion to dismiss for failure to state a claim upon which relief can be granted." *Palcko v. Airborne Express, Inc.*, 372 F.3d 588, 597 (3d Cir.2004). The Third Circuit has further "clarified which standard of review should be applied in evaluating motions to compel arbitration: [w]hen it is apparent, based on the face of a complaint, and documents relied upon in the complaint, that certain of a party's claims are subject to an enforceable arbitration clause, a motion to compel arbitration should be considered under a Rule 12(b)(6) standard without discovery's delay." *Laborers' Combined Funds of W. Pennsylvania for Ameris v. Macson Corp.*, No. 2:16-CV-01506, 2018 WL 2009090, at *2 (W.D. Pa. Apr. 30, 2018) (citing *Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 771 (3d Cir. 2013) (internal quotations omitted).

In ruling on a Rule 12(b)(6) motion, a court may consider "the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." *Lum v. Bank of Am.*, 361 F.3d 217, 221 n. 3 (3d Cir. 2004), abrogated in part on other grounds by *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

### B. THE FEDERAL ARBITRATION ACT MANDATES ARBITRATION OF THE CLAIMS SET FORTH IN THE COMPLAINT.

The FAA creates a body of federal substantive law governing arbitration that is applicable in state and federal courts. *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 25 and n.32, 103 S. Ct. 927, 942 and n. 32 (1983) ("*Moses Cone*"). Thus, the issue of arbitrability is a question of substantive federal law. *Id.* at 24, 103 S. Ct. at 941, 130 L. Ed. 2d at 785. Section 2 of the FAA provides:

> A written provision in any … contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such

6

> contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration on an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

(9 U.S.C. § 2.)

The Supreme Court has repeatedly upheld the enforceability of arbitration clauses pursuant to the FAA. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S. Ct. 1302 (2001). In addition, the Court has a long history of supporting a "liberal federal policy favoring arbitration agreements." *Moses Cone*, 460 U.S. at 24, 130 S. Ct. at 941. The FAA has been interpreted to evidence the "preeminent concern of Congress" that private agreements to arbitrate be honored. *Dean Witter Reynolds, Inc., v. Byrd*, 470 U.S. 213, 221, 105 S. Ct. 1238, 1242 (1985). Moreover, when determining the scope of an arbitration agreement, it is well established that "any doubts" must be "resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay or a like defense to arbitrability." *Moses Cone*, 460 U.S. at 24, 130 S. Ct. at 941.

Significantly, Section 3 of the FAA expressly provides that if suit is brought on an issue referable to arbitration under a written agreement, the court *shall* stay the matter until arbitration "has been had in accordance with the terms of the Agreement." 9 U.S.C. § 3. (emphasis added). Accordingly, Congress has mandated the enforcement of arbitration agreements consistent with their terms. *See Southland Corp. v. Keating*, 465 U.S. 1, 10, 104 S. Ct. 852, 858 (1984).

The FAA's application is mandatory to all arbitration agreements "involving commerce." 9 U.S.C. § 2. The Supreme Court has expansively interpreted Section 2 of the FAA in accordance with the full extent of Congress' legislative power under the Commerce Clause, broadly interpreting the language "involving commerce" as the functional equivalent of

7

"affecting" commerce. *Allied-Bruce Terminix Companies, Inc. v. Dobson*, 513 U.S. 265, 273-77, 115 S. Ct. 834, 839-41 (1995). "[A] broad interpretation of this language is consistent with the [FAA's] basic purpose, to put arbitration provisions on 'the same footing' as a contract's other terms." *Id*. at 275, 115 S. Ct. at 840. Further, the Supreme Court has extended the FAA's coverage to all employment contracts except for those of transportation workers. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119, 121 S.Ct. 1302, 149 L.Ed.2d 234 (2001); *see also Equal Employment Opportunity Comm'n v. Waffle House, Inc.*, 534 U.S. 279, 389, 122 S.Ct. 754 (2002) ("Employment contracts, except for those covering workers engaged in transportation, are covered by the FAA."). Here, the DRP reviewed and executed by McCoy was a clear condition of employment affecting commerce. *See* Exhibit B to Defendant's Motion, at "Exhibit A," Page 1.

"A motion to compel arbitration calls for a two-step inquiry into (1) whether a valid agreement to arbitrate exists and (2) whether the particular dispute falls within the scope of that agreement." *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d Cir. 2005). Indeed, it is well-settled that a court may not deny a motion to compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *AT&T Technologies, Inc. v. Commns. Workers*, 475 U.S. 643, 650, 106 S. Ct. 1415, 1419 (1986). Here, the required factors necessary to compel arbitration are satisfied, as discussed in the following sections of this Brief.

    1. <u>A Valid Agreement to Arbitrate Exists Between the Parties.</u>

Here, the arbitration agreement contained in the DRP is binding and enforceable upon the parties, and thus, a dismissal of Plaintiff's Complaint, or in the alternative a stay of court proceedings, is warranted. "The FAA provides that arbitration agreements are enforceable 'save

upon such grounds as exist at law or equity for the revocation of any contract.'" *Tripp v. Renaissance Advantage Charter Sch.*, 2003 WL 22519433, at *2 (E.D. Pa. Oct. 8, 2003) (citing 9 U.S.C. § 2). "The Third Circuit has interpreted this provision to mean that agreements to arbitrate are 'enforceable to the same extent as other contracts.'" *Id.* (citing *Harris v. Green Tree Financial Corp.*, 183 F.3d 173, 178 (3d Cir. 1999)).

Here, a valid written arbitration agreement exists between the parties: by electronically signing the DRP during the onboarding process, McCoy acknowledged receipt of, and agreement to, the DRP which contains the parties' agreement to arbitrate all disputes arising between them. Notably, the DRP was executed as a condition of McCoy's employment with PAN and was further an integral component of the onboarding documents provided to McCoy at the time of her hiring. While McCoy was not precluded from pursuing her claims through the EEOC, she expressly waived any right to pursue such claims in court litigation. Now, having received her Notice of Dismissal from the EEOC, McCoy cannot disregard and attempt to escape the DRP's mandatory arbitration provision by bringing her Complaint before this Court.

    2. <u>Plaintiff's Claims are Within the Scope of the Governing Arbitration Agreement.</u>

In determining whether asserted claims are within the scope of an arbitration agreement, courts in the Third Circuit must construe arbitration clauses as broadly as possible, resolving any doubts concerning the scope of arbitrable issues in favor of arbitration. *Tripp v. Renaissance Advantage Charter Sch.*, 2003 WL 22519433, at *3 (E.D. Pa. Oct. 8, 2003) (*citing Battaglia v. McKendry*, 233 F.3d 720, 725 (3d Cir. 2000) (quoting *AT&T Techs.*, 475 U.S. at 650)). Moreover, the existence of a broad agreement to arbitrate creates a presumption of arbitrability which is only overcome if it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that it covers the asserted dispute. *Id.* (citation omitted).

Furthermore, in determining whether a particular claim falls within the scope of an arbitration agreement, the Court's "focus is on the factual underpinnings of the claim rather than the legal theory alleged in the complaint." *Medtronic Ave, Inc. v. Advanced Cardiovascular Sys., Inc.*, 247 F .3d 44, 55 (3d Cir. 2001) (internal citations omitted). "If these factual allegations 'touch matters' covered by the parties' contract, then those claims must be arbitrated, whatever the legal labels attached to them." *Varallo v. Elkins Park Hosp.*, 63 F. App'x 601, 603 (3d Cir. 2003) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624-25, 105 S. Ct. 3346, 3352 n. 13 (1985)).

Here, Plaintiff's claims of discrimination during her employment with PAN is squarely covered by the DRP. Indeed, the DRP specifies that claims covered by the parties' mutual agreement to arbitration include all "claims for sexual or other illegal harassment or discrimination (including but not limited to, claims based on … religion … whether under federal, state or local law)." *See* Exhibit B to Defendant's Motion, at "Exhibit A," Page 3. At a bare minimum, it is clear that McCoy's claims, which arise out of her employment with PAN, "touch" upon the matters covered by the DPR's arbitration agreement, as the "factual underpinnings" of McCoy's claims include her interactions with co-workers and management in the context of her employment with PAN. Accordingly, all of Plaintiff's claims are within the scope of the Dispute Resolution Agreement, because they all arise out of and relate to her employment with PAN, and in addition, they fall squarely within the terms of the Arbitration Agreement. *See Tripp v. Renaissance Advantage Charter Sch.*, 2003 WL 22519433 (E.D. Pa. Oct. 8, 2003) (granting the employer's motion to compel with respect to the employee's state and federal wage claims and her "whistleblower" claim because they all fell within the scope of her arbitration agreement).

3. <u>This Action Should be Dismissed in Favor of Arbitration.</u>

Because McCoy's claims fall within the scope of the DRP, and must be compelled to arbitration, this court has discretion to dismiss rather than stay the action, and direct it to arbitration. "If all the claims involved in an action are arbitrable, a court may dismiss the action instead of staying it." *Seus v. John Nuveen & Co.*, 146 F.3d 175, 179 (3d Cir. 1998) (recognizing the functional equivalence of dismissing an action and directing parties to proceed to arbitration) (internal citations omitted); *see also Alford v. Dean Witter Reynolds, Inc.*, 975 F.2d 1161, 1164 (5th Cir.1992) (finding that the FAA "was not intended to limit dismissal of a case under the proper circumstances"). However, in the event that this action is not dismissed in lieu of a stay, the Third Circuit has held that when a party requests a stay as part of a motion to compel arbitration, a District Court is obligated to grant the stay if it decides to compel arbitration. *Lloyd v. HOVENSA, LLC*, 369 F.3d 263, 269 (3d Cir. 2004).

Accordingly, Defendant requests that this court grant its Motion to Compel Arbitration and dismiss Plaintiff's Complaint, or in the alternative stay this proceeding pending arbitration.

## IV. CONCLUSION

Based on the foregoing and the parties' executed Dispute Resolution Agreement, Defendant respectfully requests that the Court enter and Order dismissing (or in the alterative staying) the action at hand "until such arbitration has been had in accordance with the terms of the agreement," as is required by the FAA, and further directing that the arbitration be held consistent with the parties' Dispute Resolution Agreement, and for such other relief as the Court deems warranted.

Respectfully submitted,

STEVENS & LEE, P.C.

Dated: May 24, 2021     By: */s/ Lisa M. Scidurlo*

Lisa M. Scidurlo, Esq.
620 Freedom Business Center, Suite 200
P. O. Box 62330
King of Prussia, PA 19406
Telephone: (610) 205-6042
Facsimile: (610) 988-0870

*Counsel for Defendant*
*Pan American Group, LLC*