IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| TAMMY MCCOY,<br><br>          Plaintiff,<br><br>     v.<br><br>PAN AMERICAN GROUP,<br><br>          Defendant. | 2:21-CV-00389-CCW |

**MEMORANDUM OPINION AND ORDER**

**I.     Background**

On March 24, 2021, Tammy McCoy filed a Complaint alleging that Defendant Pan American Group ("PAN"), her former employer, discriminated against her on the basis of her Neopaganist religious beliefs, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., and the Pennsylvania Human Relations Act, 42 P.S. § 951 et seq.  *See* ECF No. 1. In response, PAN moved to compel arbitration pursuant to the Dispute Resolution Program ("DRP") acknowledgment that PAN contends Ms. McCoy signed during her onboarding process to work for PAN.

On June 21, 2021, the Court denied without prejudice Defendant's motion to compel arbitration and to dismiss complaint, ECF No. 7, and ordered the parties to proceed to limited fact discovery on the issue of arbitrability.  ECF No. 11.  Following that fact discovery, Defendant Pan American Group ("PAN"), renewed its Motion to Compel Arbitration and to Dismiss Complaint, ECF No. 16, which Plaintiff Tammy McCoy opposes.  *See* ECF Nos. 17, 20, 23, 26.  Having been fully briefed, the matter is now ripe for disposition.

## II. Legal Standard

### A. The Federal Rule of Civil Procedure 56 Standard Applies to PAN's Motion to Compel Arbitration

When presented with a motion to compel arbitration, the Court must affirmatively answer two questions before compelling arbitration pursuant to § 4 of the Federal Arbitration Act: (1) whether the parties entered into a valid arbitration agreement; and (2) whether the dispute at issue falls within the scope of the arbitration agreement. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 523 (3d Cir. 2009). "Before a party to a lawsuit can be ordered to arbitrate and thus be deprived of a day in court, there should be an express, unequivocal agreement to that effect." *McCoy v. Pan Am. Grp.*, No. 2:21-CV-00389-CCW, 2021 U.S. Dist. LEXIS 114816, at *2–3 (W.D. Pa. June 21, 2021) (citing *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*, 636 F.2d 51, 54 (3d Cir. 1980)).

Previously, the Court found that there was "a genuine question as to whether [Ms. McCoy] was provided an opportunity to review, much less assent to the terms and conditions of the arbitration agreement and employee handbook" and ordered limited fact discovery as to this issue. ECF No. 11 at 3.

Based on the parties' briefing, it is clear that their dispute focuses solely on the first question—whether the parties entered into a valid arbitration agreement—and not whether the dispute at issue falls within the scope of the arbitration agreement. *See generally*, ECF No. 17 at 9–10 (contending that Ms. McCoy's claim falls within the DRP); ECF No. 23 at 1 ("Plaintiff's response brief makes clear that there is no dispute that the arbitration agreement is valid and covers the subject matter of Plaintiff's claim"); *see also* ECF Nos. 20 & 26.

Because the parties have conducted fact discovery on this issue, the court decides a motion to compel arbitration under the summary judgment standard set forth by Federal Rule of Civil

Procedure 56, not the standard for a motion to dismiss under Rule 12(b)(6). *See Guidotti v. Legal Helpers Debt Resolution, LLC*, 716 F.3d 764, 776 (3d Cir. 2013); *Davis v. Cintas Corp.*, 2:18-cv-01200, 2019 U.S. Dist. LEXIS 87261, at *5 (W.D. Pa. May 23, 2019) (Hornak, C.J.).

Under Rule 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he moving party bears the initial burden of showing that the non-movant has failed to establish one or more essential elements of its case, and, once that initial burden is met, the non-moving party must 'go beyond the pleadings and by her own affidavits, or by the "depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial."'" *Guidotti*, 716 F.3d at 772 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The party opposing summary judgment must show that there is a genuine dispute of material fact and must support that assertion by "citing to particular parts of ... the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations..., admissions, interrogatory answers, or other materials." *Id.* (citing Fed. R. Civ. P. 56(c)(1)(A)).

In evaluating a motion to compel arbitration under the Rule 56 standard, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Guidotti*, 716 F.3d at 772 (citing *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)). But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor…" under Rule 56 "to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury

3

could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations and quotations omitted).

If a genuine issue of material fact remains after summary judgment on whether a validly formed and enforceable arbitration agreement exists, "the court must proceed summarily to trial on 'the making of the arbitration agreement.'" *MXM Constr. Co. v. N.J. Bldg. Laborers Statewide Benefit Funds*, 974 F.3d 386, 406 (3d Cir. 2020);  9 U.S.C. § 4 ("If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof.").

### III. Discussion

#### A. Elements for a Valid Arbitration Agreement Under Pennsylvania Law

In determining whether the parties entered into a valid arbitration agreement, courts turn to "ordinary state-law principles that govern the formation of contracts." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009) (quoting *First Options of Chic., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)); *Aliments Krispy Kernels, Inc. v. Nichols Farms*, 851 F.3d 283, 288 (3d Cir. 2017).  Neither party disputes that Pennsylvania law applies, and, as discussed in the Court's prior order, Ms. McCoy's employment and other relevant events occurred in Pennsylvania, and this Court sits in Pennsylvania. *McCoy*, 2021 U.S. Dist. LEXIS 114816, at 3.

"To form an enforceable contract, there must be an offer, acceptance and consideration." *Bush v. Comcast Cable Communs. Mgmt., LLC*, No. 2:19-cv-01004-NR, 2020 U.S. Dist. LEXIS 130428, at *23–24 (W.D. Pa. July 22, 2020) (Ranjan, J.).  Under Pennsylvania law, a contract entered into without knowledge of the existence of the offer and knowledge of the specific terms thereof is not enforceable:

> It is basic contract law that there . . . must be an intended, definite, specific offer before any offer can be accepted or any enforceable contract created. One cannot suppose that another made an offer, was willing to make an offer or intended sometime to do so. Minds for contractual obligation, must meet upon definite, specific things.

*Morosetti v. La. Land & Exploration Co.*, 564 A.2d 151, 153 (Pa. 1989); *Bush*, 2020 U.S. Dist. LEXIS 130428, at *23–24 ("[w]ithout knowing the terms of the contract, one cannot accept them."). "Therefore, an employee cannot validly agree to arbitrate his claims unless he has been advised of the arbitration terms." *Bush*, 2020 U.S. Dist. LEXIS 130428, at *23–24.

Further, "Pennsylvania law requires that any agreement to arbitrate be 'clear and unmistakable.'" *Scott v. Educ. Mgmt. Corp.*, 662 F. App'x 126, 131 (3d Cir. 2016) (internal citations omitted). In determining whether the parties agreed to arbitration, the Third Circuit has recognized that "[a] party may, in an effort to avoid arbitration, contend that it did not intend to enter into the agreement which contained an arbitration clause," however, such "[a] naked assertion ... by a party to a contract that it did not intend to be bound by the terms [of an arbitration clause]," would be "insufficient to place in issue the 'making of the arbitration agreement' for purposes of the FAA." *Guidotti*, 716 F.3d at 778 . However, the Third Circuit warned that it does not seek "to cut off legitimate disputes over an alleged agreement to arbitrate when there has been '[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits ....'" *Id.* "[I]n most cases [that] should be sufficient to require a jury determination on whether there had in fact been a 'meeting of the minds.'" *Id.*

### B. There is a Genuine Dispute of Material Fact as to Whether Ms. McCoy Signed the DRP

#### 1. PAN Failed to Respond to Ms. McCoy's Additional Statements of Material Facts

In filing its Motion, PAN followed Rule 56 of Local Rules of this Court, which require a motion, accompanying brief, a concise statement of material facts, and appendix. *See* LCvR 56.B; *see* ECF Nos. 16, 17. In opposition, Ms. McCoy filed a memorandum, a responsive concise statement of material facts, and an appendix. *See* LCvR 56.C; *see* ECF Nos. 18, 19, 20. In Ms. McCoy's responsive concise statement of material facts, she included "in separately numbered paragraphs any other material facts that are allegedly at issue, and/or that the opposing party asserts are necessary for the Court to determine the motion for summary judgment." LCvR 56.C.1.c.; *see* ECF No. 18 ¶¶ 55–109. Although PAN was granted leave to file a reply brief, PAN failed to respond to Ms. McCoy's additional facts. *See* LCvR 56.D (requiring that if a moving party replies to the opposing party's submission, it must do so in the same manner set forth in Local Rule 56.C.); *see* ECF No. 23. Thus, under Local Rule 56.E, "[a]lleged material facts set forth in … [Ms. McCoy's] Responsive Concise Statement, which are claimed to be undisputed, will for the purpose of deciding the motion for summary judgment be deemed admitted unless specifically denied or otherwise controverted by a separate concise statement of the opposing party." LCvR 56.E.

#### 1. The Parties Dispute the Material Facts in This Case

The parties disagree on most of the facts in this case. However, they agree that Ms. McCoy was employed as a Restaurant Staff Associate at PAN's Southland location twice—first when she was hired February 2019 until her voluntary resignation in July 2019, and then when she was rehired on or about October 10, 2019. ECF No. 18 ¶¶ 19, 28. There is also no substantive dispute

6

that the onboarding documents contain an acknowledgement of the dispute resolution program (the "DRP") that provides for arbitration. *Id.* ¶¶ 7, 49-54.

This case involves competing narratives about Ms. McCoy's hiring and onboarding process at PAN. Specifically, the parties dispute whether Ms. McCoy created a talentReef account when applying for a job at PAN and whether she used a talentReef account to digitally sign the onboarding documents, including the DRP acknowledgement, in both February 2019 and October 2019.

Ms. McCoy does not dispute the substance of PAN's hiring policies and procedures, which Defendants allege require applicants to fill out a talentReef account with their own username and password that is then used throughout their onboarding process to collect the applicant's signatures on various documents. ECF No. 18 ¶¶ 2–18. Instead, Ms. McCoy testified that PAN did not follow these policies during her onboarding process in February 2019 and October 2019. *Id.* Ms. McCoy further contends that she did not, and could not have, electronically signed the DRP acknowledgement on October 10, 2019 at 1:36 p.m., because she was on the bus returning home so that her husband could go to work at the same Southland Café. ECF No. 18 ¶ 86. As such, she alleges that the General Manager, Ms. Stephens completed Ms. McCoy's onboarding documents and electronically signed the DRP acknowledgement on October 10, 2019 at 1:36 p.m. *Id.* ¶ 78.

In its Motion to Compel, PAN articulates three specific reasons why Ms. McCoy's denial of having created and used a talentReef account for her application and onboarding is a "false story" and further contends that Ms. McCoy's generalized denials that she never created, saw, or signed the talentReef account are insufficient to create a genuine issue of material fact. ECF No. 17 at 10–14.

Viewing the facts in the light most favorable to Ms. McCoy, the non-moving party, the Court finds that there are genuine issues of material fact as to whether Ms. McCoy created a talentReef account and electronically signed the DRP acknowledgement, and therefore, whether there was a valid agreement to arbitrate between the parties.

### 2. There Is a Genuine Dispute of Material Fact as to Whether Ms. McCoy Created a TalentReef Account When Applying to Work

PAN contends that it is impossible that Ms. McCoy never accessed talentReef and created a profile, because any application for employment at PAN was necessarily processed through talentReef.  ECF No. 17 at 10–11.  In support, PAN provides two declarations from Human Resources Field Manager Casey Brozack and Human Resources Project Manager Katrina Petkovic detailing talentReef's procedures regarding account creation, maintenance, and passwords.  *See* ECF Nos. 16-3 & 16-4.  Specifically, PAN contends that it only posts positions to third-party job sites, such as Snagajob (the website which Ms. McCoy alleges that she used to apply), and that all applicants are redirected from those third-party job posting sites to talentReef to create their account and submit their application to PAN.  ECF No. 17 at 10–11.  Thus, PAN contends that the only way it could have received Ms. McCoy's application on February 3, 2019 was for Ms. McCoy to have been redirected from Snagajob, created a talentReef profile, and then applied through talentReef.  *Id.*

Viewing the facts in the light most favorable to Ms. McCoy as the non-moving party, there is a material dispute as to whether Ms. McCoy created the talentReef account in February 2019. First, Ms. McCoy testified that she applied for a position through Snagajob on two separate occasions and months prior to February 3, 2019, which is the date that PAN asserts she created her talentReef account.  ECF No. 16-7 at 62:16–15.  Ms. McCoy testified that she never heard back on her first application and that although she applied again in November 2018, she was not

contacted by PAN until February 2019. *Id*. Therefore, Ms. McCoy argues that, under PAN's theory where Snagajob redirects applicants to talentReef, she should have been prompted to establish a talentReef account, at the latest, in November 2018, not on February 3, 2019. ECF No. 20 at 7 n.2.

In further support of Ms. McCoy's contention that she did not fill out the talentReef application, Ms. McCoy testified that the talentReef application does not contain accurate information. ECF No. 20 at 8; ECF No. 16-7 at 62:3–15, 63:6–9, 95:3–13. Notably, she contends that (1) the application lists the wrong dates for her prior jobs and (2) her position at Ollie's, which she held immediately prior to her employment with PAN, was not listed on the talentReef application although she had listed that position on her November 2018 Snagajob application to PAN. ECF No. 20 at 8; ECF No. 16-7 at 62:3–15, 63:6–9, 95:3–96:13. Ms. McCoy also points out that PAN's talentReef February 2019 and October 2019 applications are identical, despite PAN's policy requiring a new talentReef application each time a person applies for a job, whether as an initial hire or a rehire. ECF No. 20 at 89; *see* ECF No. 16-3 ¶ 6(a) ("In October 2019, PAN required all applicants for employment, even rehires such as Tammy McCoy, to first create an account/profile on the talentReef portal to re-apply for any position at PAN's café."); *compare* ECF No. 16-8 at PAN 000177–108 (February 2019 application) *with* ECF No. 16-12 at PAN 00002–00005 (October 2019 application) (both indicating that the application was "last updated March 12, 2019").

Finally, in her own statement of material facts, to which PAN did not respond, Ms. McCoy points to Ms. Brozack's testimony for the contention that PAN has in the past used other third-party sites, including Snagajob, to collect applications, but Ms. Brozack did not know the process

9

by which those applications from Snagajob would be transferred over to talentReef. ECF No. 18 ¶ 105 (citing ECF No. 16-5 at 9:18–25; 10:24–11:10).

### 3. There Is a Genuine Dispute of Material Fact as to Whether Ms. Stephens Was Involved in Ms. McCoy's February 2019 Onboarding Process

PAN challenges Ms. McCoy's assertion that Christa Stephens, General Manager of the Southland Café, hired Ms. McCoy and completed her onboarding by creating Ms. McCoy's talentReef account, as opposed to Ms. McCoy completing the account and onboarding documents herself. ECF No. 17 at 11–12. In support, PAN asserts that Ms. Stephens did not become the General Manager at the Southland café until February 6, 2019 and thus could not have created the talentReef account on February 3, 2019 or used the talentReef during the onboarding process on February 5, 2019. *Id.*

However, viewing the facts in the light most favorable to Ms. McCoy as the non-moving party, there is a material dispute as to whether Ms. Stephens was performing duties as the General Manager of the Southland Café during Ms. McCoy's February 2019 onboarding process. While there is no indication of where Ms. Stephens was working on February 3, 2019, *see* ECF No. 18 ¶ 26 (Ms. McCoy's response stating that the "time-clock records do not reflect where Christa Stephens was on February 3, 2019"), Ms. Stephens' timecard records indicate that Ms. Stephens was at the Southland Café location starting from February 4, 2019, *see* ECF No. 16-11 at 3, and Ms. Stephens electronically signed Ms. McCoy's I-9 form as the manager on February 5, 2019— one day before the day that PAN contends that Ms. Stephens actually started as General Manager of the Southland Café. *See* ECF No. 16-8 at 48; ECF No. 20 at 11 n.4. Additionally, while PAN contends that there is no way that Ms. Stephens could have known Ms. McCoy's sensitive personal information, Ms. McCoy testified that she provided only the W-4 information when asked, and then Ms. Stephens continued to fill out the rest of the application. ECF No. 16-7 at 22:25–23:2.

### 4. There Is a Genuine Dispute of Material Fact as to Whether Ms. Stephens Electronically Signed the DRP Acknowledgement on October 10, 2019

Finally, PAN contends that Ms. McCoy's narrative that she was on the bus at 1:36 p.m. on October 10, 2019 when the DRP acknowledgement was signed in order to allow her husband to report to work at the Southland Café by 3:00pm is fabricated. ECF No. 17 at 12–13. Specifically, PAN contends that: (1) Ms. McCoy was not scheduled to work on October 10, 2019 (as evidenced by the fact that Ms. McCoy did not start her training videos until October 14, 2019); (2) Ms. McCoy's husband, Mr. Degraffenreidt was not rehired until October 17, 2019; and (3) Ms. Stephens, who allegedly completed Ms. McCoy's onboarding, was not scheduled to work until 10:00 a.m. (whereas Ms. McCoy alleges she reported to Ms. Stephens around 9:00 a.m.). *Id.*

Viewing the facts in the light most favorable to Ms. McCoy as the non-moving party, there is a material dispute as to whether she was in the Southland Café and electronically signed the onboarding documents, including the DRP acknowledgement, on October 10, 2019.

First, Ms. McCoy argues that PAN cannot rely on the paystubs and timekeeping records to establish that she did not begin to work until October 14, 2019, while simultaneously contending that Ms. McCoy completed the onboarding paperwork on October 10, 2019. *See* ECF No. 20 at 5–6. Although PAN contends that Ms. McCoy could not have worked on October 10, 2019 because she had no pay and timekeeping records for that day, *see* ECF No. 17 at 13, ECF No. 16-13, ECF No. 16-14 at 7, ECF No. 16-15, PAN's own policy requires that Ms. McCoy be paid for any time spent onboarding. ECF No. 19-5 ("You **must** be clocked in to complete the employee onboarding documentation") (emphasis original), ECF No. 16-5 at 24:9–26:10 (Brozack testifying that "[y]ou have to be clocked in to complete your onboarding."). As further support for the unreliability of such records, Ms. McCoy points to the fact that in the first few days of employment, PAN employees clock in and out with their supervisors rather than time cards, which is the process

she alleges she used. ECF No. 16-5 at 24:9–13 (Brozack testifying that "[t]he employee would not have a clock-in number while they're doing [the onboarding process]. They would be entered in a manual clock-in later for the hours that they spent."); *see also*, ECF No. 19-1 ¶ 17. Ms. McCoy further testified that she had raised the issue of not being paid for her work on October 10 & 11, 2019 with Ms. Stephens. ECF No. 16-7 at 108:1–18.

In response to PAN's claim that Ms. Stephens was not scheduled to work until 10:00 a.m. on October 10, 2019, whereas Ms. McCoy recalls that she reported to Ms. Stephens at 9:00 a.m., Ms. McCoy notes that managers, such as Ms. Stephens, are not required to clock in and out, meaning that Ms. McCoy's testimony that she met with Ms. Stephens at 9:00 a.m. is not inconsistent. ECF No. 18 ¶ 37; *see also*, ECF No. 16-5 at 31:14–26.

Finally, while there is documentary evidence indicating that Ms. McCoy watched her first training video starting on October 14, 2019, *see* ECF No. 16-16, and that her husband began working after October 10, 2019, *see* ECF No. 16-17, ECF No. 16-18, Ms. McCoy unequivocally testified and affirmed in her declaration that she watched training videos on October 10, 2019 and that the same day, Ms. Stephens told Ms. McCoy that she would finish the document while Ms. McCoy went to catch the bus, so that Ms. McCoy's husband would not be late. *Guidotti*, 716 F.3d at 772 (the Court "may not make credibility determinations or weigh the evidence").

Thus, viewing the facts in the light most favorable to Ms. McCoy as the non-moving party, the Court finds that there is a material dispute as to whether Ms. McCoy was in the Southland Café and electronically signed the onboarding documents, including the DRP acknowledgement, on October 10, 2019.

### 5. Whether Ms. McCoy's Denials Are Sufficient to Overcome Summary Judgment

Finally, PAN contends that Ms. McCoy's "bald denial that she ever accessed talentReef cannot create a genuine dispute of fact," and that the Court should ignore Ms. McCoy's affidavit in light of the evidence presented by PAN. *See* ECF No. 17 at 15 (citing *Kirleis*, 560 F.3d at 161 (3d Cir. 2009) ("[i]t is true that 'conclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment' … [i]nstead, the affiant must set forth specific facts that reveal a genuine issue of material fact")).

In the majority of the cases cited by PAN, the plaintiff, who denied that he or she had agreed to arbitration, had in fact (in some way or another) seen, signed, not objected to, or acquiesced to an arbitration agreement. *See* ECF No. 23 at 3; *see Dicent v. Kaplan Univ.*, 758 F. App'x 311, 313–14 (3d Cir. 2019) (plaintiff "herself conceded that she e-signed the Enrollment Packet PDF" containing the arbitration agreement); *Bush v. Comcast Cable Communications Management, LLC*, No. 2:19-CV-01004-NR, 2020 U.S. Dist. LEXIS 130428, at *10–11 (W.D. Pa. July 22, 2020) (Ranjan, J.) (plaintiff during deposition admitted that "she had no 'reason to dispute' that the offer letter [containing an dispute resolution provision] she received was the same offer letter produced by [defendant] with its motion to compel" and that she had "electronically accepted the terms of her employment outlined in the offer letter"); *Aldrich v. Univ. of Phx., Inc.*, 661 F. App'x 384, 390–91 (6th Cir. 2016) (finding that there was "no dispute before the district court that the plaintiffs received the handbook. Thus, the plaintiffs had notice of the arbitration agreement," despite the fact that plaintiffs denied having received, seen, or electronically signed the acknowledgment form); *Lockette v. Morgan Stanley*, No. 18-CV-876 (JGK), 2018 U.S. Dist. LEXIS 171156, at *10–11 (S.D.N.Y. Oct. 3, 2018) (plaintiff's mere denial that he did not receive email containing arbitration agreement was insufficient to deny motion to compel arbitration when

13

"defendants provide evidence that the email was addressed and delivered to the plaintiff's assigned email account, was not located in his SPAM folder, and did not trigger a 'bounceback' email indicating it was not delivered or undeliverable" and that plaintiff was actively using his email account around the time of such email); *but see*, *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735–36 (7th Cir. 2002) (plaintiff's mere averment that she did "does not recall seeing or reviewing the Arbitration Program brochure that Defendant alleges was included with her payroll check" did not raise genuine issue of fact as to whether brochure was given to her; further, plaintiff suggested in her pleadings that she was aware of the employee magazine article regarding arbitration); *Schrock v. Nomac Drilling, LLC*, No. 2:15-cv-1692, 2016 U.S. Dist. LEXIS 40574, at *10 (W.D. Pa. Mar. 28, 2016) (McVerry, J.) (finding that plaintiff's assertions that he never signed the arbitration form were insufficient because plaintiff had to use the last four digits of his social security number to log in and there was evidence that the plaintiff was at his job when the form was signed).

Here, Ms. McCoy has (1) consistently denied that she signed up for talentReef and saw or otherwise acquiesced to the DRP on talentReef and in the employee handbook,[1] (2) identified inconsistent application of PAN's own policies, and (3) testified as to her whereabouts on October 10, 2019, in a way that creates a genuine issue of material fact as to whether the DRP acknowledgement was signed by Ms. McCoy. *See Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) ("the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." (internal citations and quotations omitted)).

PAN contends that Ms. McCoy's testimony must be disregarded in light of its objective, contrary documentary evidence. ECF No. 17 at 11. For the purposes of summary judgment, the

---

[1] In her statement of material facts, to which PAN did not respond, Ms. McCoy contends that she never saw or was provided with the employee handbook either on talentReef or otherwise. ECF No. 18 ¶¶ 81, 85, 86, 106–09.

Court may disregard "conclusory, self-serving affidavits," *Kirleis*, 560 F.3d at 161, and this "rule has been extended to self-serving deposition testimony," *Walsh v. Fusion Japanese Steakhouse, Inc.*, 548 F. Supp. 3d 513, 530 (W.D. Pa. 2021) (Wiegand, J.). Here, Ms. McCoy's testimony, when juxtaposed with the other evidence—notably, the inconsistencies identified by Ms. McCoy with respect to the accuracy of Ms. McCoy's identical February 2019 and November 2019 talentReef applications, Ms. Stephens' alleged lack of involvement in Ms. McCoy onboarding process, and the purported gaps between PAN's timekeeping/payroll records—is sufficient for a rational factfinder to credit Ms. McCoy's testimony, despite its alleged self-serving nature. Ms. McCoy's testimony and affidavit are not only consistent with one another, but sufficiently detailed with respect to her version of what occurred on October 10, 2019, to describe a set of circumstances which would render the formation of an agreement to arbitrate impossible. *See Kirleis*, 560 F.3d at 161–62 (noting that the plaintiff's affidavit "details the specific circumstances that rendered the formation of an agreement to arbitrate impossible," and that even if the defendant had "submitted contradictory evidence showing that [plaintiff] had received the bylaws [containing the arbitration provision] or had signed them," "the task of weighing the evidence and choosing which side to believe would have been for a jury").

Thus, viewing the facts in the light most favorable to Ms. McCoy, the Court finds that Ms. McCoy's assertion that she did not agree to the DRP is not "[a] naked assertion ... that [Ms. McCoy] did not intend to be bound by the terms [of the DRP]," but rather an "[a]n unequivocal denial that the agreement had been made" accompanied by her deposition and sworn affidavit which is sufficient "sufficient to require a jury determination on whether there had in fact been a 'meeting of the minds.'" *Guidotti*, 716 F.3d at 778 (*Par-Knit Mills, Inc.*, 636 F.2d at 55).

### C. At This Time, the Court Will Not Address Arguments Regarding Which DRP Applies

In her surreply, Ms. McCoy contends that only the October 2019 DRP acknowledgement, as opposed to the February 2019 DRP acknowledgement, would be binding for the purposes of this dispute. ECF No. 26 at 3–4. Given that this argument was first raised in the surreply, the Court will defer addressing any arguments with respect to which DRP acknowledgement is appliable until a jury determines whether Ms. McCoy signed the February 2019 and/or October 2019 DRP acknowledgement. *See Townsend v. Pinnacle Entm't, Inc.*, 457 F. App'x 205, 209 (3d Cir. 2012) ("While an agreement to arbitrate does not usually continue in effect after the underlying contract expires, a provision relating to dispute resolution may, in some instances, survive the expiration of the contract.").

## IV. Conclusion

For the foregoing reasons, PAN's Motion to Compel arbitration is denied, and the Court will conduct a jury trial on the narrow issue of whether there was a valid agreement to arbitrate between the parties.

IT IS SO ORDERED.

DATED this 18th day of April, 2022.

BY THE COURT:

/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge

cc (via ECF email notification):

All Counsel of Record